**JUDGE RAMOS**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------x

PRIVADO MARKETING GROUP LLC, DC 115
CEDAR NR, LLC and DON COQUI HOLDING
COMPANY, LLC,

                Plaintiffs

       -against-

ELEFTHERIA REST CORP.,

               Defendant.

------------------------------------x

Civil Action No.: _____

**COMPLAINT**

Plaintiffs, Privado Marketing Group LLC ("Privado"), DC 115 Cedar NR, LLC ("DC"),

and Don Coqui Holding Company, LLC ("DC Holding") (collectively, "Plaintiffs") by their

undersigned attorneys, Law Office of Donald R. Dunn and Mautner Law, allege as their

Complaint the following:

### INTRODUCTION AND OVERVIEW

1.    This is an action for trademark infringement under the Lanham Act, 15

U.S.C. §§ 1051 *et seq.* and § 1114(a); unfair competition, passing off, false advertising and false

designation of origin under the Lanham Act, 15 U.S.C. § 1125(a); common law trademark

infringement; and common law unfair competition arising from defendant's unauthorized use of

Plaintiffs' trademark.

2.    Specifically, Plaintiffs are the owner of federal trademark Serial No.

77470507, Registration No. 3,764,084 for "DON COQUI" (the "DON COQUI Mark").

3.    Plaintiffs use the DON COQUI Mark in connection with the operation of

the Don Coqui restaurants at 115 Cedar Street, New Rochelle, New York and at 107

Mamaroneck Avenue, White Plains, New York (the "DON COQUI Restaurants"), well-known and high quality restaurant focused on quality food and a family friendly atmosphere.

4.      In flagrant violation of Plaintiffs' rights, defendant Eleftheria Rest Corp. ("Defendant") has misappropriated the DON COQUI Mark and is using that mark to operate and promote a competing restaurant located at 2818 31st Street, Queens, New York 11102 (the "Infringing Restaurant").

5.      Between February 15, 2013 and present, Plaintiffs and their counsel have made numerous demands that Defendant cease and desist from using Plaintiffs' DON COQUI Mark.  Defendant definitively refused, and has continued in its wholesale misappropriation of Plaintiffs' DON COQUI Mark and related assets, despite Defendant's knowledge that such use infringes Plaintiffs' rights in their trademark.

6.      Plaintiffs therefore bring this action for trademark infringement under Section 32(1) of the Federal Trademark (Lanham) Act, 15 U.S.C. § 1114(1); unfair competition and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); common law trademark infringement; and common law unfair competition.  Plaintiff seeks preliminary and permanent injunctive relief; an accounting and award of Defendant's profits; compensatory, treble, and/or statutory damages; an award of costs and attorneys' fees; and such other and further relief as the Court deems just and proper.

## THE PARTIES

7.      Plaintiff Privado Marketing Group LLC is a limited liability company organized and existing under the laws of New York, with its principal place of business at 115 Cedar Street, New Rochelle, New York 10801.

8.     Plaintiff DC 115 Cedar NR, LLC is a limited liability company organized and existing under the laws of New York, with its principal place of business at 115 Cedar Street, New Rochelle, New York 10801.

9.     Plaintiff Don Coqui Holding Company, LLC is a limited liability company organized and existing under the laws of New York, with its principal place of business at 115 Cedar Street, New Rochelle, New York 10801.

10.    Plaintiffs' principals are non-parties Jaleene Rodriguez and Jewelle Rodriguez (collectively, the "Rodriguez Family"), daughters of non-party restaurateur Jimmy Rodriguez.  DC and DC Holding own and operate the Don Coqui Restaurants and Privado is the owner of the DON COQUI Mark.

11.    Upon information and belief, defendant Eleftheria Rest Corp. is a corporation organized and existing under the laws of New York, with its principal place of business located at 2818 31st Street, Queens, New York 11102.  Defendant owns and operates the Infringing Restaurant.

### JURISDICTION AND VENUE

12.    This Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a) and (b), and 1367.

13.    This Court has personal jurisdiction over Defendant because Defendant has distributed, offered for sale, sold, or shipped merchandise and food and provided services to persons within this District, Defendant regularly transacts and conducts business within this District, and Defendant otherwise has made or established contacts within this District sufficient to permit the exercise of personal jurisdiction.

14.     Venue is proper pursuant to 28 U.S.C. § 1391(a), (b), and (c), because a substantial part of the acts or omissions giving rise to Plaintiffs' claims occurred in this District, and Defendants have sufficient connection with the District to make venue proper in this District.

## FACTUAL BACKGROUND

### A.     The DON COQUI Restaurants and Mark

15.     The patriarch of the Rodriguez Family, Jimmy Rodriguez, has been engaged in the restaurant business for more than three decades.  For example, Mr. Rodriguez created Jimmy's Bronx Café located in the Bronx, New York, a restaurant frequented by members and staff of the New York Yankees.  Later, Mr. Rodriguez created Sofrito, a popular restaurant located in New York , New York that offers the finest authentic Puerto Rican cuisine.

16.     In conceiving of a new restaurant and theme, Mr. Rodriguez chose the name Don Coqui as a continuing reference to and celebration of his Puerto Rican heritage.  A "coqui" is a tree frog that is indigenous to Puerto Rico.

17.     The Rodriguez Family opened the first DON COQUI Restaurant with certain investors in or about July 2009.  The DON COQUI Restaurants are owned and operated by Plaintiffs.

18.     The Rodriguez Family through Mr. Rodriguez registered the DON COQUI Mark on March 23, 2010 with the intention that the Rodriguez Family would use that mark as part of their planned expansion of restaurant operations around the country.  A copy of the Certificate of Registration of the DON COQUI Mark is annexed hereto as **Exhibit A**.

19.     The Rodriguez Family then formed Privado Marketing Group LLC and Mr. Rodriguez assigned the DON COQUI mark to it.  A copy of the United States Patent and

4

Trademark Office's Notice of Recordation of Assignment of the DON COQUI Mark is annexed hereto as **Exhibit B**.

20.     The DON COQUI Restaurants have exceptional marketplace recognition and goodwill in the community and with respect for the DON COQUI Mark, together with specific characteristics and elements associated with that Mark.

21.     The DON COQUI Mark, its use and the accompanying characteristics and elements associated with the Mark, therefore are extremely valuable to Plaintiffs.

**B.     Defendant's Misappropriation of the DON COQUI Mark**

22.     One of Plaintiffs' investors was non-party John Mangan, who received a 10% equity share of DC Holding in exchange for his investment.

23.     Thereafter, in or about 2011, the Rodriguez Family bought out their investors, including Mr. Mangan, leaving Mr. Mangan with no ownership or other interest in Plaintiffs.

24.     Prior to that time, upon information and belief, Mr. Mangan had become affiliated with Defendant and its principals.

25.     Prior to 2011, Defendant owned and operated the Infringing Restaurant at 30-15 Newtown Avenue, Astoria, Queens, under the name Dekko Café and/or Cienna Restaurant Lounge.

26.     The Infringing Restaurant was a failing restaurant.

27.     In or about April 2011, Defendant approached the Rodriguez Family for assistance in managing the Infringing Restaurant.

28.     In connection with the Rodriguez Family's decision to assist in the operations of the Infringing Restaurant, Defendant agreed to give them 25% equity ownership of

Defendant and to pay the Rodriguez Family for their consultation services and expertise with regard to operating the Infringing Restaurant in an attempt to make it profitable.

29.   In exchange, for more than a year the Rodriguez Family provided Defendant with their expertise in the restaurant business, consultation services, and access to Plaintiffs' marketing material, communications systems and other administrative functions, and a verbal license to use the name "Don Coqui" in connection with the Rodriguez Family's involvement in those operations.

30.   The Rodriguez Family successfully educated Defendant in the restaurant business, allowing Defendant to operate profitably the Infringing Restaurant.

31.   In connection with the Rodriguez Family's involvement in Defendant's operations, Defendant unsuccessfully attempted to induce the Rodriguez Family to invest substantial sums in Defendant and the Infringing Restaurant.

32.   Thereafter, Plaintiffs became disenchanted with the manner in which the Defendant was operating the Infringing Restaurant.

33.   Further, the Rodriguez Family ultimately declined Defendant's solicitation of investment funds.

34.   Accordingly, Plaintiffs revoked the verbal license to use the DON COQUI Mark, in or about January 2013, and ceased their involvement with the operations of the Infringing Restaurant.

35.   On or about February 5, 2013, Plaintiffs sent Defendant a cease and desist letter, demanding that Defendant cease its unauthorized misappropriation of Plaintiffs' DON COQUI Mark.  A copy of that February 5, 2013 letter is annexed hereto as **Exhibit C**.

36.   Defendant refused to discontinue their use of the DON COQUI Mark.

6

37.     After communicating by telephone and email with representatives and counsel for Defendant, Plaintiffs sent a follow up demand letter to Defendant, renewing Plaintiffs' cease and desist demand, on or around March 22, 2013, a copy of which is annexed hereto as **Exhibit D**.

### C.     **Defendant's Willful Wrongdoing**

38.     To date, Defendant has not complied with or indicated a willingness to comply with Plaintiffs' demand letters.  Defendant continues to conduct business and operate the Infringing Restaurant using the DON COQUI Mark even after Defendant was put on actual notice of such infringement, and consequently, continues to engage in trademark infringement and unfair competition.

39.     Upon information and belief, Defendant is using the DON COQUI Mark in a deliberate and willful attempt to draw on the goodwill and commercial magnetism of the DON COQUI Mark and the popularity and name recognition of the DON COQUI Restaurant and the Rodriguez Family's popularity and reputation for quality restaurants.

40.     Defendant's aforesaid conduct is causing immediate and irreparable injury to Plaintiffs and to their goodwill, reputation, and ability to operate and expand their business, and will continue both to damage Plaintiffs and to deceive the public unless enjoined by this Court.

41.     In addition to its willful trademark infringement, Defendant has taken affirmative and intentional steps to materially and adversely affect the business operations of DON COQUI Restaurant.

42.     Specifically, Defendant has locked Plaintiffs out of their own domain, www.doncoqui.com, has removed from that website the branding and other information about

7

DON COQUI Restaurant and is instead using Plaintiffs' website to promote the Infringing Restaurant. Defendant also has removed the "About Us" section of that website, which describes the concept behind DON COQUI Restaurant, but continues to use photos and other elements of the DON COQUI Restaurant and Mark to promote the Infringing Restaurant.

43.     Defendant has restricted the Plaintiffs' and the Rodriguez Family's access to their email accounts with respect to DON COQUI Restaurant operations.

44.     Defendant has misappropriated Plaintiffs' electronic customer database for use in connection with the Infringing Restaurant.

45.     On or about April 3, 2013, Defendant through its agents intentionally disconnected Plaintiffs' telephone systems such that it would not ring in the DON COQUI Restaurant and only go into the voice mail phone system when a customer called DON COQUI Restaurant. No one calling DON COQUI Restaurant could make a reservation or speak with the hostess stand, and the altered outgoing message removed the option for callers to contact DON COQUI Restaurant when they called the phone number.

46.     It was only after Plaintiffs' counsel threatened immediate legal action and pointed out the substantial damages that Defendant caused to Plaintiffs that Defendant through its agents restored the phone services.

47.     Defendant also has stopped paying the Rodriguez Family any distributions in connection with their 25% ownership interest in Defendant, despite the fact that, upon information and belief, the Infringing Restaurant is grossing more than $2 million per year and other Defendant has made distributions to its other shareholders.

48.     Defendant's use of the DON COQUI Mark and misappropriation of Plaintiffs' email and telephone systems creates a substantial confusion between the Defendant's Infringing Restaurant and the DON COQUI Restaurants.

49.     Further, this consumer confusion coupled with the Infringing Restaurant's apparent focus on nightclub/caberet operation and "specialty nights," as compared to the DON COQUI Restaurant and it high quality restaurant services, quality food and a familial atmosphere, threatens irreparable harm to the good will and reputation of the DON COQUI Mark.

50.     Plaintiffs have on a number of occasions, via telephone and email, attempted to obtain Defendant's amicable agreement to cease using the DON COQUI Mark.

51.     Despite such attempts, Defendant has refused to cease using the DON COQUI Mark and continues to misappropriate the DON COQUI Mark.

**COUNT I**
Federal Trademark Infringement
(15 U.S.C. § 1114)

52.     Plaintiffs repeat and reallege each and every allegation contained in the preceding paragraphs of this Complaint.

53.     Plaintiffs' federal registration of the DON COQUI Mark is conclusive evidence of Plaintiffs' exclusive right to use that mark, pursuant to the Lanham Act, 15 U.S.C. § 1115. The registration is incontestable, which provides conclusive evidence of its validity, Plaintiffs' ownership of the Mark and exclusive right to use the mark in commerce in connection with the goods and services specified in the certificates of registration under 15 U.S.C. § 1115(b).

54. Defendant's wrongful use of the DON COQUI Mark is likely to cause confusion as to sponsorship or authorization by Plaintiffs, or alternatively, destroy the origin-identifying function of the DON COQUI Mark.

55. Defendant's actions constitute trademark infringement in violation of section 32(a) of the Lanham Act, 15 U.S.C. § 1114.

56. As a proximate result of Defendant's actions, Plaintiffs have suffered and will continue to suffer great damage to their business, goodwill, reputation, profits and the strength of their trademark, in an amount to be determined at trial but believed to exceed $1,000,000.

57. Further, the injury to Plaintiffs is and continues to be ongoing and irreparable. An award of monetary damages alone cannot fully compensate Plaintiffs for their injuries and Plaintiffs lack an adequate remedy at law.

58. The foregoing acts of infringement have been and continue to be deliberate, willful and wanton, making this an exceptional case within the meaning of 15 U.S.C. § 1117.

59. Plaintiffs are therefore entitled to a permanent injunction against Defendant, as well as all other remedies available under the Lanham Act, including, but not limited to, compensatory damages in an amount to be determined at trial but believed to exceed $1,000,000; treble damages in an amount to be determined at trial but believed to exceed $3,000,000.; disgorgement of Defendant's profits, in an amount to be determined at trial but believed to exceed $300,000; and Plaintiffs' costs and attorney's fees.

## COUNT II
### Federal Unfair Competition
### (15 U.S.C. § 1125(a))

60.     Plaintiffs repeat and reallege each and every allegation contained in the preceding paragraphs of this Complaint.

61.     The DON COQUI Mark is a distinctive mark and has become associated with Plaintiffs' DON COQUI Restaurant and thus exclusively identifies Plaintiffs' business, products, and services.

62.     Because of Defendant's wrongful use of the DON COQUI Mark, consumers are deceptively led to believe that the Infringing Restaurant originates with or is sponsored or otherwise approved by Plaintiffs and the Rodriguez Family, in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), or alternatively, will cause patrons to believe that the DON COQUI Mark is generic, thus destroying the goodwill and value Plaintiffs have built with the DON COQUI Mark.

63.     The foregoing acts and conduct by Defendant constitute false designation of origin, passing off and false advertising in connection with products and services distributed in interstate commerce, in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

64.     As a result of Defendant's unauthorized use of the DON COQUI Mark, the public is likely to be misled and confused as to the source, sponsorship, or affiliation of Defendant's Infringing Restaurant.

65.     Defendant's conduct is willful, intended to reap the benefit of Plaintiffs' goodwill, and violates Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

66.     Defendant's wrongful conduct is likely to continue unless restrained and enjoined.

67.     As a result of Defendant's wrongful conduct, Plaintiffs' have suffered and will continue to suffer damages.  Plaintiffs have no adequate remedy at law for Defendant's wrongful conduct because, among other things, (a) Plaintiffs' trademark is unique and valuable property which has no readily determinable market value, (b) Defendant's infringement constitutes harm to Plaintiffs such that Plaintiffs could not be made whole by any monetary award, (c) if Defendant's wrongful conduct is allowed to continue, the public is likely to become further confused, mistaken, or deceived as to the source, origin, or authenticity of the infringing materials, and (d) Defendant's wrongful conduct, and the resulting damage to Plaintiffs, is continuing.

68.     Plaintiffs are therefore entitled to a permanent injunction against Defendant, as well as all other remedies available under the Lanham Act, including, but not limited to, compensatory damages in an amount to be determined at trial but believed to exceed $1,000,000; treble damages in an amount to be determined at trial but believed to exceed $3,000,000.; disgorgement of Defendant's profits, in an amount to be determined at trial but believed to exceed $300,000; and Plaintiffs' costs and attorney's fees.

### COUNT III
(Common Law Trademark Infringement)

69.     Plaintiffs repeat and reallege each and every allegation contained in the preceding paragraphs of this Complaint.

70.     Plaintiffs have common law rights in the DON COQUI Mark based on their continuous use of the Mark in connection with the operation of the DON COQUI Restaurant.

71.     Defendant's unauthorized use of the DON COQUI Mark to promote, advertise, market, and/or sell their goods and services is likely to cause confusion, mistake, and

deception of the public as to the identity and origin of Defendant's goods, or as to a connection or affiliation with Plaintiffs, or permission from Plaintiffs, that does not exist, causing irreparable harm to Plaintiffs for which there is no adequate remedy at law. Defendant's conduct thus constitutes common law trademark infringement.

72.     Despite their actual and constructive knowledge of Plaintiffs' ownership and prior use of the DON COQUI Mark, Defendant has continued to use the DON COQUI Mark without Plaintiffs' authorization or consent.

73.     Defendant's actions are deliberate and willful and have been done with the intention of trading upon the valuable goodwill built up by Plaintiffs in their DON COQUI Mark.

74.     Plaintiffs have sustained injury, damage, and loss based on Defendant's actions.

75.     Plaintiffs are therefore entitled to damages in an amount to be determined at trial, disgorgement of Defendant's profits, and Plaintiffs' costs and attorney's fees.

### COUNT IV
(Common Law Unfair Competition)

76.     Plaintiffs repeat and reallege each and every allegation contained in the preceding paragraphs of this Complaint.

77.     In addition to infringing upon Plaintiffs' DON COQUI Mark, as described in the preceding paragraphs of this Complaint, Defendant has acted in bad faith.

78.     Plaintiffs have sustained injury, damage, and loss based on Defendant's actions.

79.     Plaintiffs are therefore entitled to damages in an amount to be determined at trial, disgorgement of Defendant's profits, and Plaintiffs' costs and attorney's fees.

WHEREFORE, Plaintiffs pray for judgment against Defendant as follows:

(1)     that Defendant, its officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with Defendant who receive actual notice of the court's order by personal service or otherwise, be permanently enjoined from:

(a) using the DON COQUI Mark or any variation of the word "Coqui" (including any translation of same from Spanish into another language) specifically including, but not limited to, any term that includes "Coqui" or a misspelling of "Coqui" in connection with the promotion, marketing. advertising, public relations and/or operation of the Infringing Restaurant or any other restaurant;

(b) diluting, blurring, passing off or falsely designating the origin of the DON COQUI Mark, and from injuring Plaintiffs' goodwill and reputation;

(c) doing any other act or thing likely to induce the belief that the businesses, services or products of the Infringing Restaurant or any other restaurant are in any way connected with, sponsored, affiliated, licensed, or endorsed by Plaintiffs or the Rodriguez Family;

(d) using the DON COQUI Mark for goods or services, or on the internet, or as domain names, email addresses, meta tags, invisible data, or otherwise engaging in acts or conduct that would cause confusion as to the source, sponsorship or affiliation of Defendant with Plaintiffs.

(2)      awarding Plaintiffs their actual damages sustained as a result of Defendant's wrongful actions, in an amount to be determined at trial but believed to be in excess of $1,000,000;

(3)      awarding Plaintiffs treble damages, pursuant to 15 U.S.C. § 1117(a) and (b), arising out of Defendant's acts of willful trademark infringement and unfair competition, in an amount to be determined at trial but believed to be in excess of $3,000,000;

(4)      compelling Defendant to disgorge all profits made as a result of Defendant's wrongful actions, in an amount to be determined at trial but believed to be in excess of $300,000;

(5)      awarding Plaintiffs interest, including pre-judgment interest, on the foregoing sums;

(6)      awarding Plaintiffs their costs in this civil action, including reasonable attorneys' fees and expenses, pursuant to 15 U.S.C. § 1117(a) and (b);

(7)      awarding Plaintiffs exemplary and punitive damages to deter any future willful infringement, as the Court finds appropriate;

(8)      directing such other action as the Court may deem appropriate to prevent the trade and public from deriving the erroneous impression that any goods or services offered, advertised, or promoted by or on behalf of Defendants are authorized by Plaintiffs or related in any way to Plaintiffs' products or services;

(9)     directing that Defendant files with the Court and serve upon Plaintiffs' counsel within thirty (30) days after entry of judgment a report in writing under oath setting forth in detail the manner and form in which Defendant has complied with the above.; and

(10)    awarding Plaintiffs such other and further relief as the Court may deem just and proper.


Dated: Bronx, New York
       May 9, 2013

                                LAW OFFICE OF DONALD R. DUNN

                                By: _____
                                     Donald R. Dunn, Jr. (DD0069)

                                441 East 139th Street
                                Bronx, New York 10454
                                347-270-1863
                                Donald@drdunnlaw.com


                                MAUTNER LAW

                                Scott A. Mautner (SM2060)
                                200 Business Park Drive, Suite 201
                                Armonk, New York 10504
                                914.730.1003
                                smautner@mautnerlaw.com


                                *Attorneys for Plaintiffs*

16

# **<u>Exhibit A</u>**

# United States of America

## United States Patent and Trademark Office

# DON COQUI

**Reg. No. 3,764,084**  RODRIGUEZ, JIMMY (UNITED STATES INDIVIDUAL)
Registered Mar. 23, 2010  C/O 5 HANOVER SQUARE, SUITE 500
NEW YORK, NY 10004

**Int. Cl.: 43**  FOR: RESTAURANT AND BAR SERVICES, IN CLASS 43 (U.S. CLS. 100 AND 101).

FIRST USE 7-3-2009; IN COMMERCE 7-3-2009.

SERVICE MARK
PRINCIPAL REGISTER  THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PAR-
TICULAR FONT, STYLE, SIZE, OR COLOR.

THE FOREIGN WORDING IN THE MARK TRANSLATES INTO ENGLISH AS SIR OR MR.
("DON") AND THE NAME OF A CARIBBEAN TREE FROG ("COQUI").

SN 77-470,507, FILED 5-9-2008.

DARRYL SPRUILL, EXAMINING ATTORNEY



David J. Kappos

Director of the United States Patent and Trademark Office

# **<u>Exhibit B</u>**

TO: J. ALFRED MURRAY, DAVIS WRIGHT TREMAINE   COMPANY:1300 SW FIFTH AVENUE, SUIT



## UNITED STATES PATENT AND TRADEMARK OFFICE

UNDER SECRETARY OF COMMERCE FOR INTELLECTUAL PROPERTY AND
DIRECTOR OF THE UNITED STATES PATENT AND TRADEMARK OFFICE

APRIL 12, 2011

PTAS

J. ALFRED MURRAY, DAVIS WRIGHT TREMAINE
1300 SW FIFTH AVENUE, SUITE 2300
PORTLAND, OR 97201-5630


*900189014*

UNITED STATES PATENT AND TRADEMARK OFFICE
NOTICE OF RECORDATION OF ASSIGNMENT DOCUMENT

THE ENCLOSED DOCUMENT HAS BEEN RECORDED BY THE ASSIGNMENT DIVISION OF
THE U.S. PATENT AND TRADEMARK OFFICE.  A COMPLETE MICROFILM COPY IS
AVAILABLE AT THE ASSIGNMENT SEARCH ROOM ON THE REEL AND FRAME NUMBER
REFERENCED BELOW.

PLEASE REVIEW ALL INFORMATION CONTAINED ON THIS NOTICE.  THE
INFORMATION CONTAINED ON THIS RECORDATION NOTICE REFLECTS THE DATA
PRESENT IN THE PATENT AND TRADEMARK ASSIGNMENT SYSTEM.  IF YOU SHOULD
FIND ANY ERRORS OR HAVE QUESTIONS CONCERNING THIS NOTICE, YOU MAY
CONTACT THE EMPLOYEE WHOSE NAME APPEARS ON THIS NOTICE AT 571-272-3350.
PLEASE SEND REQUEST FOR CORRECTION TO:  U.S. PATENT AND TRADEMARK OFFICE,
MAIL STOP: ASSIGNMENT SERVICES BRANCH, P.O. BOX 1450, ALEXANDRIA, VA 22313.

RECORDATION DATE: 04/12/2011        REEL/FRAME: 004519/0712
                                    NUMBER OF PAGES: 2

BRIEF: ASSIGNS THE ENTIRE INTEREST AND THE GOODWILL
DOCKET NUMBER: 86915-1  RN 3764084

ASSIGNOR:
     RODRIGUEZ, JIMMY                DOC DATE: 04/06/2011
                                    CITIZENSHIP: UNITED STATES
                                    ENTITY: INDIVIDUAL

ASSIGNEE:
     PRIVADO MARKETING GROUP LLC    CITIZENSHIP: NEW YORK
     117 CEDAR STREET               ENTITY: LIMITED LIABILITY
     NEW ROCHELLE, NEW YORK 10801       COMPANY

# Exhibit C

# DON COQUI

## 115 Cedar Street
## New Rochelle, New York 10801

February 15, 2013

Mr. John Mangan
Eleftheria Restaurant Corp
30-15 Newton Ave
Astoria, NY 11102

Dear John:

Recently, Don Coqui became aware of actions by your management that are not consistent with Don Coqui's positive image and brand promise and are, in fact, blemishing the brand. It has also been brought to our attention that you have met with other parties to replace the Don Coqui brand name at your establishment. This would be an amicable solution. In fact, we would like to make the transition immediately. We request that the Don Coqui mark be removed from all public and private areas associated with your Astoria restaurant including, but not limited to: the name of your restaurant, other on-site use, media use and online presence.

Don Coqui continually and consistently uses its mark. As a result of these efforts Don Coqui's customers, partners, suppliers, employees, media sources and the general public have come to understand the Don Coqui brand as established, successful and trustworthy. In order to further clarify the threat that your use of the Don Coqui mark imposes to brand equity, the following incidents of trademark abuse are noted here:  *Note this list is illustrative and not to be deemed complete.*

A. Inconsistent brand messages have been released without the express consent of Don Coqui management
B. Inconsistent service, often unprofessional, has been reported
C. Inconsistent offerings on your menu are present
D. Inconsistent pricing is present in your offerings

In short, the Don Coqui brand has been built upon a set of pillars that help the organization properly channel and guide behavior. If the position doesn't guide and inspire the entire organization, it has no hope of guiding and inspiring the consumer. Your actions violate the foundation of the Don Coqui brand. The strength of our identity depends on the consistency of its application and diversion from this consistency will falsely connect the Don Coqui brand with offensive activities.

Please remove the Don Coqui name from your establishment by March 1, 2013.

Sincerely,

Jaleene Rodriguez

cc: Dimitrios Mitsios
   Jewelle Rodriguez
   Jimmy Rodriguez
   Andreas Tsangarides, CPA

# Exhibit D

# MautnerLaw

200 Business Park Drive, Suite 201, Armonk NY 10504
Tel: 914.730.1003

245 Park Avenue, 24th Floor, New York, NY 10167.
Tel: 212.372.8758

---

March 22, 2013

**Via PDF**

Robert B. Golden, Esq.
Lackenbach Siegel LLP
One Chase Road
Scarsdale, New York 10583

Re: <u>Don Coqui/Trademark Infringement</u>

Dear Mr. Golden:

As you are aware from our call last week, I have been retained by Privado Marketing Group, LLC, the owner and holder of the federally registered trademark "Don Coqui" (Serial No. 77470507/Reg. No. 3,764,084) (the "Mark") in International Class No. 43 with respect to the trademark infringement by your clients Eleftheria Restaurant Corp. ("Eleftheria") and John Mangan of the Mark. I am writing in response to your letter dated March 5, 2013 and in furtherance to our phone call.

As you and your clients are aware, the Rodriguez family is the 100% owner of my client, and has operated the Don Coqui New Rochelle restaurant ("Don Coqui") for approximately 4 years. Don Coqui has exceptional marketplace recognition and goodwill in the community and with respect to the Mark, together with specific characteristics and elements associated with the Mark. The Mark, its use and the accompanying characteristics and elements associated with the Mark, are extremely valuable properties to my client. In addition, as noted above, the ownership of the Mark is a matter of public record as it is the subject of a federal registration with United States Patent and Trademark Office.

Eleftheria's unauthorized use of the Mark is causing substantial confusion between the Eleftheria owned restaurant and its apparent focus on its nightclub operation, and the high quality restaurant services my client provides, which are focused on quality food and a familial atmosphere. In addition, your clients are further diluting the Mark due to their "specialty nights" such as a comedy night and Tuesday discount night. This is causing significant damage to the Mark and the Rodriguez family's reputation, and constitutes a serious infringement of my client's trademark, service mark, trade name and other proprietary rights. Further, as you know your client's unauthorized use of the Mark also constitutes unfair competition under §43(A) of the Federal Lanham Act and is likely to dilute the distinctiveness of the Mark.

Reference is made to the letter to Eleftheria dated February 15, 2013 ("Notice Letter") in which Mr. Mangan and Eleftheria were given written notice to cease and desist from the use of Mark and any other related elements and/or service characteristics associated with the Mark and Don Coqui.

Robert B. Golden, Esq
March 22, 2013
Page 2

It has been over thirty (30) days from the date of the Notice Letter and your client continues to use the Mark. The statements in your letter do not grant your client a license to use the Mark, nor justify the blatant infringement of a federally registered trademark.

Therefore, this letter serves as further notice that the continued use by Eleftheria and/or Mr. Mangan of the Mark is trademark infringement and your clients will be liable for various damages, which may include, the disgorgement of profits earned by your clients, the loss of profits by my client or a reasonably royalty determined by a tribunal of appropriate jurisdiction. In addition, your clients may be responsible for my client's reasonable legal fees as the unauthorized use of the Mark is intentional.

As to the arguments presented in your letter and the information you mentioned during our call, one thing remains clear… your clients do not presently have the right to use the trademark Don Coqui in connection with restaurant and bar services. Therefore such use must cease immediately. There may be issues which the parties need to resolve, or other claims your clients may have, but neither provides them the right to continue to use the Mark willfully without permission of the trademark owner.

Your stated contention that Mr. Mangan is a part owner of the trademark strains credulity. It is undisputed that Mr. Rodriguez has been engaged in the restaurant business for 30+ years, and after creating Sofrito, he chose the name Don Coqui as a continuing reference to his Puerto Rican heritage and its meaning therewith. The Rodriguez family always intended to use the Mark as part of their planned expansion of restaurant operations around the country. Accordingly, Mr. Rodriguez registered the Mark with the full knowledge of Mr. Mangan and the other potential partners in Don Coqui. Mr. Mangan respected and never contested such ownership, being well aware of it for years. The registration of the Mark evidences such ownership.

Moreover, Mr. Mangan was involved in the operations of Eleftheria for approximately one year before the Rodriguez family decided to turn the failing operation around. It was only when the Rodriguez family decided to assist in the operations of Eleftheria that the name "Don Coqui" was licensed to that entity for use in connection with the Rodriguez family's involvement in those operations. The license has clearly been revoked and your clients are using the Mark willfully, without permission.

In addition to its willful trademark infringement, your client has taken affirmative and intentional steps to materially and adversely affect the business operations of Don Coqui. As you are aware, Mr. Mangan's role with regard to the restaurant operations was to perform marketing and in that role, he was permitted to become the "administrator" with regard to several vendor accounts. Over the last 30 days or so, using his administrator status, Mr. Mangan or persons under his direction have taken the following acts, among others:

- Locked the Rodriguez family out of the domain www.doncoqui.com, while at the same time removing the branding and other information about Don Coqui, and restricted the Rodriguez family's access to their email accounts with respect to Don Coqui's operations.

- Converted the use of the email database of Don Coqui for the use of Eleftheria. It is undisputed that your clients have no rights in this database.

- Removed Don Coqui's "About Us" section which describes the concept behind "Don Coqui" from the website but continue to use photos and other elements of Don Coqui on

Robert B. Golden, Esq
March 22, 2013
Page 3

the website, including the press accolades for Don Coqui, coupons and other art of Don Coqui.

- Converted the verbiage that was created for Don Coqui 3 years ago on the telephone caller hold message and removed the option for callers to contact Don Coqui when they call the phone number.

Prior to any discussion of settlement of terms between the parties regarding matters not related to the trademark infringement it is necessary for the unauthorized use of the Mark to cease immediately, for your client to restore all changes to the website and telephone lines made over the last several weeks; and to immediately cease use of the Don Coqui database and other intellectual property created for Don Coqui.

Finally, as I mentioned on our call, your letter inappropriately threatens potential criminal implications of Mr. Rodriguez in order to settle a civil matter. I am sure that you and your client understand the seriousness of such matters.

In conclusion, please be advised that any further use of the Mark will be considered continued willful and deliberate infringement of my client's rights for which your client(s) will be held fully accountable. The conversion of its other intellectual property and the willful intent to damage its business will not be tolerated.

This letter is sent without prejudice as to all rights and remedies, in law and in equity, available to my client, including an injunction and an accounting for damages and profits, in the event that litigation is necessary.

You may reach me at the above telephone number to further discuss this matter. I look forward to hearing from you regarding these matters since you now have had time to confer with your clients, and your immediate compliance with the above-mentioned demands.

Very truly yours,

Scott A. Mautner

cc:    Jimmy Rodriguez
       Jaleene Rodriguez
       Jewelle Rodriguez