UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
PRIVADO MARKETING GROUP LLC, DC 115
CEDAR NR, LLC and DON COQUI HOLDING
COMPANY, LLC,

                Plaintiffs,

    - against -

ELEFTHERIA REST CORP.,

                Defendant.
-----------------------------------------------------------------x
ELEFTHERIA REST CORP. and JOHN
MANGAN,

                Counterclaim Plaintiffs,

    - against -

PRIVADO MARKETING GROUP LLC, DC 115
CEDAR NR, LLC and DON COQUI HOLDING
COMPANY, LLC,

                Counterclaim Defendants.
-----------------------------------------------------------------x

**OPINION AND ORDER**

13-cv-3137-ER

Ramos, D.J.:

    This case involves a dispute over the ownership and use of the federally registered trademark "DON COQUI" (the "Mark"). Doc. 1 ("Compl"). Plaintiffs and Counterclaim Defendants Privado Marketing Group LLC ("Privado"), DC 115 Cedar NR, LLC and Don Coqui Holding Company, LLC (collectively, "Counterclaim Defendants") operate restaurants in New Rochelle and White Plains, New York under the Don Coqui name.[1] Compl. ¶ 3. Defendant

---

[1] The counterclaims themselves only name Privado as a Counterclaim Defendant, although all three Counterclaim Defendants are identified as such in the document's case caption. *See* Doc. 21. Because the three entities have proceeded jointly—both in filing their pleading in response to the counterclaims and in moving to dismiss—the Court refers to them collectively for purposes of the instant motion. *See* Docs. 22-23.

Eleftheria Rest Corp. ("Eleftheria") operates a restaurant in Queens, New York under the same name. *See id.* ¶ 4.

Counterclaim Defendants brought suit for trademark infringement and unfair competition, asserting those claims both under the Lanham Act and at common law. *Id.* ¶¶ 52-79. Eleftheria and John Mangan ("Mangan")[2] (together, "Counterclaim Plaintiffs") responded by asserting counterclaims for (1) cancellation of Counterclaim Defendants' registration of the Mark, along with a declaration of the registration's invalidity and unenforceability ("Counterclaim One"), and (2) a declaration that Counterclaim Plaintiffs own and/or have the right to continue using the Mark ("Counterclaim Two"). Doc. 21. Presently before the Court is Counterclaim Defendants' motion to dismiss the counterclaims pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b). Doc. 23.

For the reasons discussed below, Counterclaim Defendants' motion to dismiss is GRANTED.

## I.  Background

### A.  General Overview

Typically, when confronted with a motion to dismiss, the Court bases its recitation of the facts on the allegations contained in the contested pleading, which the Court accepts as true for purposes of deciding the motion. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). However, because the counterclaims do not provide the background of the underlying dispute, and because most of the core facts alleged in the Complaint are themselves disputed, the

---

[2] As discussed below, Mangan was not originally named as a defendant in this suit and only entered the case with the filing of the Amended Answer. Though the precise status of the parties' current relationships are not immediately clear, it is sufficient for present purposes simply to note that Mangan was originally affiliated with Counterclaim Defendants but is now affiliated with Eleftheria. *See* Compl. ¶¶ 22-24; *see also* Am. Answer ¶ 24 (admitting that, at a certain point, Mangan became affiliated with Eleftheria).

Court begins by quoting the joint summary of the case that the parties prepared in anticipation of the initial pretrial conference:[3]

> This is an action for trademark infringement and unfair competition, at common law and under the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*, 1114(a) arising from [Eleftheria's] use of the DON COQUI trademark (the 'Mark' or 'DON COQUI Mark'). It is not contested that [Counterclaim Defendants] own the Certificate of Registration in the Mark issued by the United States Patent and Trademark Office, by assignment. The parties dispute, however, who owns the Mark. [Counterclaim Defendants] contend that the patriarch of the Rodriguez family [non-party Jimmy Rodriguez] conceived of the Mark, that he and the Rodriguez family first used the Mark in commerce and duly registered it, and that they are the rightful owners of the Mark based upon those alleged facts. [Eleftheria] contends that certain of its principals were involved in the first use of the Mark in commerce and that, therefore, [Eleftheria] or certain of its principals share an ownership interest in the Mark and that [Counterclaim Defendants'] registration of the Mark can be invalidated based upon those alleged facts.

Doc. 20.

### B. Procedural Background

Counterclaim Defendants—the plaintiffs in the main action—filed their Complaint against Eleftheria on May 9, 2013. Doc. 1. Eleftheria answered the following month. Doc. 7. The Answer included a single counterclaim. *See id.* On July 2, 2013, the Court denied Counterclaim Defendants' motion for a preliminary injunction. *See* Dkt. Minute Entry dated 07/02/2013. Eleftheria amended the Answer on November 4, 2013. Doc. 21. That Amended Answer contained the two counterclaims presently before the Court, and its filing marked Mangan's entrance into the case as a second Counterclaim Plaintiff. *See id.* Counterclaim Defendants filed a reply to the counterclaims two weeks later. Doc. 22. That reply also introduced claims against Mangan that essentially mirror those originally brought against

---

[3] The Court notes that this summary is provided solely to offer context for the discussion that follows; the Court draws no factual inferences from it in rendering its decision on the merits of the motion, nor should the Court's inclusion of the joint statement be read to bind either party to a particular litigating position. The Court further notes that this summary was prepared prior to Mangan's entrance into the action.

3

Eleftheria. *See id.* Counterclaim Defendants filed the instant motion on December 6, 2013, asking the Court to dismiss both counterclaims. Doc. 23. Mangan answered the claims against him the same day. Doc. 25.

### C. The Counterclaims

The essence of the two counterclaims, taken together, is that Counterclaim Plaintiffs were the actual first users of the Mark. Counterclaim One alleges that non-party Jimmy Rodriguez[4] committed fraud on the Patent and Trademark Office ("PTO") when he applied to register the Mark. Am. Countercl. ¶ 10.[5] Specifically, Counterclaim Plaintiffs allege that Rodriguez was not the first user of the Mark, that he incorrectly claimed that he personally owned and used the Mark, and that he misrepresented the date the Mark was first used. *Id.* ¶¶ 11-14. They go on to allege that these misrepresentations were intentional and that the PTO relied upon these misrepresentations in granting the registration, which would not have been granted otherwise. *Id.* ¶¶ 15-17.

Counterclaim Plaintiffs then offer alternative theories. First, assuming that Rodriguez did own the Mark, they allege that he abandoned the same "by purported licensing the Mark without exercising quality control over its use" prior to its assignment to Privado. *Id.* ¶ 18. Next, assuming the assignment to Privado was valid, they allege that Privado never used the Mark, abandoned the Mark, and engaged in the same "purported licensing . . . without exercising quality control." *Id.* ¶¶ 19-21.

---

[4] Rodriguez is a thirty-year veteran of the restaurant business whose previous ventures have included New York eateries Jimmy's Bronx Café and Sofrito. Compl. ¶ 15.

[5] Citations to the Amended Counterclaims refer to the numbered paragraphs beginning on page 8 of the Amended Answer. Doc. 21.

Counterclaim Two alleges that Counterclaim Plaintiffs used the Mark prior to Privado and have used it continuously since the date of first use. *Id.* ¶¶ 23-23. Specifically, the counterclaim alleges:

> 23. Mangan and/or Eleftheria, and/or entities from which Mangan and/or Eleftheria derive rights, made use of the Mark prior to Privado and/or any person or entity from which Privado claims rights.
>
> 24. Mangan and/or Eleftheria, and/or entities from which Mangan and/or Eleftheria derive rights, have made continuous use of the Mark since the date of first use.

*Id.* Therefore, based on priority of use, Counterclaim Plaintiffs allege that one or both of them owns and has the exclusive right to use the Mark. *Id.* ¶¶ 25-26. In the alternative, Counterclaim Plaintiffs allege that Eleftheria's "long and continuous use of the Mark" entitles it to continue doing so without accounting to or obtaining a license from Privado. *Id.* ¶¶ 28-29.

## II.   Legal Standard

The Federal Rules of Civil Procedure provide that a Rule 12(b) motion "must be made before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b). Here, Counterclaim Defendants answered the counterclaims prior to filing the instant motion. However, the Second Circuit has held that "a motion to dismiss for failure to state a claim . . . that is styled as arising under Rule 12(b) but is filed after the close of pleadings, should be construed by the district court as a motion for judgment on the pleadings under Rule 12(c)." *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001) (footnote omitted).[6] The standard under Rule

---

[6] Rule 12(c) permits parties to move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(b). The Court notes that Mangan's answer to Counterclaim Defendants' cross-claims against him was filed subsequent to, but on the same day as, the instant motion. However, particularly because Mangan's responsive pleading does not speak to the counterclaims now at issue, the Court deems the pleadings to have been sufficiently "closed" such that the instant motion is properly before the Court under Rule 12(c). Lest there be any dispute over this point, the Court further notes that it was not until five days

12(c) is identical to the one used to evaluate 12(b)(6) motions. *See id.* (citing, *inter alia*, *Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 644 (2d Cir. 1998)).

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Koch*, 699 F.3d at 145. However, the Court is not required to credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also id.* at 681 (citing *Twombly*, 550 U.S. at 551). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79. If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). The Second Circuit "has read Rule 9(b) to

---

later, when the Court waived its pre-motion conference requirement and set the briefing schedule, that the motion was formally accepted for consideration. Doc. 26.

require that a complaint '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'"  *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)).  Moreover, the fact that scienter can be alleged "generally" merely means that Rule 9(b)'s heightened particularity requirement does not apply; it does not mean that conclusory allegations will suffice.  *Iqbal*, 556 U.S. at 686-87 ("Rule 9 merely excuses a party from pleading discriminatory intent under an elevated pleading standard.  It does not give him license to evade the less rigid—though still operative—strictures of Rule 8."); *see Krys v. Pigott*, 749 F.3d 117, 129 (2d Cir. 2014).

The legal standard on a Rule 12 motion is the same when evaluating whether counterclaims have been sufficiently pled.  *See, e.g.*, *Weisman Celler Spett & Modlin, P.C. v. Trans-Lux Corp.*, No. 12 CIV. 5141 JMF, 2014 WL 476348, at *2 (S.D.N.Y. Feb. 6, 2014); *Ross Stores, Inc. v. Lincks*, No. 13 CIV. 1876 SAS, 2013 WL 5629646, at *2 (S.D.N.Y. Oct. 4, 2013); *Overseas Private Inv. Corp. v. Furman*, No. 10 CIV. 7096 RJS, 2012 WL 967458, at *7-8 (S.D.N.Y. Mar. 14, 2012) (discussing the applicability of both *Twombly* and Rule 9(b) to counterclaims challenged under Rule 12(c)); *Kingvision Pay-Per-View, Ltd. v. Falu*, No. 06 CIV. 4457, 2008 WL 318352, at *1 (S.D.N.Y. Feb. 4, 2008).

**III.   Discussion**

    **A.  The Preliminary Injunction Materials Cannot Be Used To Supplement the Counterclaims**

As a threshold matter, the Court rejects Counterclaim Plaintiffs' contention that any defects in the pleadings can be cured by prior filings made in opposition to Counterclaim Defendants' preliminary injunction motion.  *See* Countercl. Pls.' Mem. of Law in Opp'n at 8-9

("[M]otions detailing the facts of claims and defenses can be used by courts to supplement pleadings for purposes of enhancing specificity if necessary."). At least one court within this Circuit has, on two occasions, expressly declined the opportunity to consider preliminary injunction materials when deciding a Rule 12(b)(6) motion, even where, unlike here, the two motions were being reviewed concurrently. *See N.Y. State Elec. & Gas Corp. v. U.S. Gas & Elec., Inc.*, 697 F. Supp. 2d 415, 423 n.1 (W.D.N.Y. 2010); *Ecogen, LLC v. Town of Italy*, 438 F. Supp. 2d 149, 163 (W.D.N.Y. 2006).

Counterclaim Plaintiffs cite only two cases in support of their position. The first, *Weiss v. Incorporated Village of Sag Harbor*, 762 F. Supp. 2d 560 (E.D.N.Y. 2011), is inapposite, as it merely reiterates the general rule that courts reviewing a motion to dismiss may consider:

> (1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

*Id.* at 567 (quoting *In re Merrill Lynch & Co., Inc.*, 273 F. Supp. 2d 351, 356-57 (S.D.N.Y. 2003) (internal quotation marks omitted)). Nothing in this standard authorizes the Court to use testimonial documents submitted at a prior stage in the litigation in order to supplement a party's otherwise-deficient pleadings, nor do Counterclaim Plaintiffs indicate that they are moving for the documents' consideration on one of these bases.[7]

---

[7] To the extent that Counterclaim Plaintiffs' papers can be read as asking the Court to take judicial notice of the preliminary injunction materials on the grounds that they are court records and thus are publicly available, the Court notes that such an approach would eviscerate the general rule precluding courts from considering extrinsic documents on a motion to dismiss. In other words, if the mere filing of a court document were sufficient to warrant the taking of judicial notice, then there would be nothing to stop parties from submitting affidavits or other

The second case cited, *Bonilla v. Trebol Motors Corp.*, 150 F.3d 77 (1st Cir. 1998), is nonbinding on this Court and, in any event, stands for a narrower proposition that the one for which it is offered.  Specifically, the First Circuit elected to "follow those courts that, in special circumstances and only for Rule 9(b) purposes, have treated the plaintiffs' opposition to summary judgment . . . as a *de facto* amendment or supplement to the complaint's allegations." *Id.* at 81.  Thus, *Bonilla*'s reasoning was limited to Rule 9(b) and is unavailing to Counterclaim Plaintiffs to the extent that their claims are otherwise deficient under Rule 8.[8]  Furthermore, *Bonilla*'s procedural posture distinguishes it from the instant action:  there, the defendants had brought an initial "barrage of legal attacks on the complaint" during the summary judgment phase, and, after defaulting prior to trial, they renewed their Rule 9(b) challenge on appeal.  *Id.* at 79-81.  The First Circuit's observation that remand "at this stage" would have been "silly" does not, therefore, speak to the propriety of dismissal in *this* case, which has yet to even enter the summary judgment phase in the first instance.  *Id.* at 81.[9]

---

evidentiary materials at the Rule 12 stage in a direct attempt to supplement their pleadings.  That the documents at issue here happened to be submitted at an earlier stage should have no bearing on the outcome.  Moreover, as discussed below, the second line of authority to which Counterclaim Plaintiffs cite undermines any notion that judicial notice is appropriate in such situations.

[8] The First Circuit's reasoning in this regard further demonstrates that it would be inappropriate for the Court to take judicial notice of the preliminary injunction materials simply because they are contained in the Court's records.  Were judicial notice available in such situations, the summary judgment materials at issue in *Bonilla* would have been properly before the court in any event, and there would have been no need for the First Circuit to have adopted a narrower exception that is limited to the Rule 9(b) context.

[9] *Bonilla* cites this Court's decision in *Buccino v. Continental Assurance Co.*, 578 F. Supp. 1518 (S.D.N.Y. 1983), in support of its holding.  150 F.3d at 81.  The Court in *Buccino* observed that, "[a]lthough the fraud claim was not as precisely pleaded as it should have been, whatever specifics were lacking in the allegations as stated in the complaint have been supplied by the documentary, affidavit and deposition evidence produced in connection with this motion [for summary judgment]."  578 F. Supp. at 1524 n.5.  Since *Buccino* involved summary judgment proceedings, wherein courts are entitled to rely on otherwise-admissible evidence, it is inapposite for present purposes.

The Court's resolution of the instant motion therefore turns on the plausibility of the counterclaims themselves, without reference to the records of the prior proceedings.[10]

### B. The Counterclaims Fail To State a Plausible Claim Under Rule 8

#### i. Counterclaim Plaintiffs' Alleged Use of the Mark

As noted above, the crux of the two counterclaims is that Counterclaim Plaintiffs were the first users of the Mark.[11]  It is a fundamental precept of trademark law that trademark rights arise from priority of use.  *See, e.g.*, *ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 146-47 (2d Cir. 2007).  "Thus, so long as a person is the first to use a particular mark to identify his goods or services in a given market, and so long as that owner continues to make use of the mark, he is 'entitled to prevent others from using the mark to describe their own goods' in that market."  *Id.* at 147 (quoting *Defiance Button Mach. Co. v. C & C Metal Prods. Corp.*, 759 F.2d 1053, 1059 (2d Cir. 1985)).

Here, the pleadings are entirely devoid of factual allegations tending to render Counterclaim Plaintiffs' use claims plausible.[12]  Indeed, apart from direct legal conclusions

---

The other case on which *Bonilla* relies, *Elias Brothers Restaurants, Inc. v. Acorn Enterprises, Inc.*, 831 F. Supp. 920 (D. Mass. 1993), is equally distinguishable, in addition to being nonbinding on this Court.  There, the deficient pleadings in question were introduced in a motion for leave to amend that was itself filed in connection with the movant's opposition to its adversary's summary judgment motion.  *Id.* at 921-22.  The court found that, since the allegations in the proposed pleadings were clearly premised on the evidentiary materials submitted as part of that opposition, additional amendments to the proposed pleadings were unnecessary.  *Id.* at 922 n.3.

[10] Counterclaim Plaintiffs' brief references certain of the facts contained in those earlier filed documents.  *See* Countercl. Pls.' Mem. of Law in Opp'n at 5, 8, 11.  However, statements contained in motion papers cannot be used to cure deficiencies in the pleadings.  *See Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998).

[11] Because the fraud allegations in Counterclaim One are themselves dependent on the first use allegations, the Court examines the counterclaims in reverse order.

[12] The deficiencies appear to be the product of a misunderstanding, on Counterclaim Plaintiffs' part, regarding the Rule 8 pleading standard.  Specifically, Counterclaim Plaintiffs cite *Brownlee v. Conine*, 957 F.2d 353, 354 (7th Cir. 1992) (Posner, J.), for the proposition that "whether a pleading is 'conclusory' is not the issue."  Countercl. Pls.' Mem. of Law in Opp'n at 13.  Putting aside the fact that Seventh Circuit authority is not binding on this Court, the

10

regarding ownership and use rights, the only allegations contained in Counterclaim Two are (1) that one or both of Counterclaim Plaintiffs (and/or one of their affiliates) used the Mark prior to Privado or any of its affiliates, and (2) that this use has been continuous. Am. Countercl. ¶¶ 23-24. But these allegations, while styled as factual assertions, are themselves conclusory. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986) ("Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation."); *see also Twombly*, 550 U.S. at 555 (quoting *Papasan* approvingly). In other words, Counterclaim Two seeks a declaration that Counterclaim Plaintiffs own the Mark by virtue of their prior and continuous use, but the only "facts" alleged in support of this claim are that they are prior and continuous users of the Mark. This question-begging approach does not render the counterclaim plausible; it merely restates the first-use theory on which their claim is based. Lacking from the pleadings are any factual allegations regarding, for instance, when or in what context the Mark was first used. There is no indication as to which of the Counterclaim Plaintiffs or their affiliates used the Mark

---

decision in *Brownlee* was rendered fifteen years prior to the Supreme Court's ruling in *Twombly* and thus reflects an outdated interpretation of Rule 8. Indeed, *Iqbal* flatly contravenes Counterclaim Plaintiffs' Rule 8 argument. *See* 556 U.S. at 679 ("In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.").

In advancing this misinterpretation, Counterclaim Plaintiffs overstate the position rightly advanced by Counterclaim Defendants. In other words, requiring Counterclaim Plaintiffs to include factual allegations in their pleadings is not equivalent to requiring that they "plead evidentiary support for their claim." *See* Countercl. Pls.' Mem. of Law in Opp'n at 11, 12. Counterclaim Plaintiffs need not proffer the evidentiary basis for whatever facts they wish to allege. They are not being asked to *prove* their claims, but they are being asked to properly *state* their claims, and this means coming forward with sufficient factual allegations to render the claims plausible. *See Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.")

at any given time,[13] and thus there is no factual content supporting the blanket assertion that the alleged use was "continuous."

Counterclaim Plaintiffs' alternative theory—that Eleftheria's "long and continuous use of the Mark" would entitle it to continue using the Mark even if Privado had priority of use—is inadequately pled for the same reasons. Am. Countercl. ¶¶ 28-29.[14]

Thus, Counterclaim Two fails to state a claim and is dismissed in its entirety.

### ii. Rodriguez's Alleged Fraud on the PTO

Since the first use claims in Counterclaim Two are insufficiently pled, and since the fraud allegations in Counterclaim One are dependent on those deficient first use claims, it necessarily follows that Counterclaim One also fails to state a plausible claim.[15]

The Lanham Act provides for cancellation of a trademark registration at any time if it was fraudulently obtained. 15 U.S.C. § 1064(3).[16] The party seeking cancellation on the basis of fraud must establish that the registrant misrepresented a material fact, that the registrant knew

---

[13] This is not to suggest that Counterclaim Plaintiffs are precluded from pleading in the alternative. *See* Countercl. Pls.' Mem. of Law in Opp'n at 9 n.2. The problem is that, on the face of the pleadings as they currently stand, Counterclaim Plaintiffs have not pled *anything*. It would be one thing to say, for instance, that Affiliate A began using the Mark on a certain date and that, alternatively, Affiliate B began using the Mark on some other date. But that is not what Counterclaim Plaintiffs have done. Instead, they have merely alleged that someone in their camp used the Mark at some point prior to its use by someone affiliated with Counterclaim Defendants. That type of generalized assertion, unsupported by any factual content, is not enough to nudge the claims across *Twombly*'s line between conceivable and plausible.

[14] It appears that this alternative theory is geared toward 15 U.S.C. § 1115(b)(5), which "preserves the common law trademark rights of parties whose continuous use of a similar mark predates the registration in question." *Dress for Success Worldwide v. Dress 4 Success*, 589 F. Supp. 2d 351, 359 (S.D.N.Y. 2008). To that end, the Court notes that this statutory exception to the priority rule also requires that the second user have begun using the mark "without knowledge of the registrant's prior use." 15 U.S.C. § 1115(b)(5). The counterclaim is silent on this element.

[15] Since the pleadings fail under Rule 8, there is no need—and, indeed, it would be futile—to subject the fraud claim to Rule 9(b)'s heightened particularity requirement at this time.

[16] The Act also provides courts with the authority to cancel trademark registrations. *See* 15 U.S.C. § 1119.

or should have known that its representation was false, that the registrant intended to induce the PTO to act in reliance thereon, that the PTO reasonably relied on the misrepresentation, and that damages proximately resulted from that reliance. *Patsy's Italian Rest., Inc. v. Banas*, 658 F.3d 254, 270-71 (2d Cir. 2011) (citing 6 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 31:61 (4th ed. 2008)).

Here, without a plausible claim that Counterclaim Plaintiffs were the first to use the Mark, the allegations that Rodriguez was *not* the first user of the Mark, did not personally use the Mark, and misrepresented the date of first use of the Mark do not rise above the level of speculation. *See* Am. Countercl. ¶¶ 11-14. The same is true of the allegation that the misrepresentations were intentional. *See id.* ¶ 15. Even when read as a whole, and even assuming that the first use allegations had been adequately pled, nothing in the counterclaims tends to suggest that Rodriguez had reason to know of and intentionally conceal Counterclaim Plaintiffs' alleged first use. *See, e.g.*, *Eaves v. Designs for Fin., Inc.*, 785 F. Supp. 2d 229, 247 (S.D.N.Y. 2011) ("The requisite strong inference of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." (quoting *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) (internal quotation marks omitted))).

Thus, Counterclaim One is dismissed to the extent it alleges fraud on the PTO.

### iii. Alternative Grounds for Cancellation of the Mark's Registration[17]

As alternative grounds for cancellation, both Rodriguez and Privado are alleged to have licensed the Mark "without exercising quality control over its use," and Privado is alleged never to have used the Mark. *Id.* ¶¶ 18-21. As with the balance of the counterclaims, these allegations fail to state a plausible claim for relief.

The Lanham Act provides for cancellation of a trademark registration if the mark has been abandoned. 15 U.S.C. § 1064(3). "To determine that a trademark or trade name is abandoned, two elements must be satisfied: non-use of the name by the legal owner and no intent by that person or entity to resume use in the reasonably foreseeable future." *Stetson v. Howard D. Wolf & Assocs.*, 955 F.2d 847, 850 (2d Cir. 1992) (citing *Silverman v. CBS Inc.*, 870 F.2d 40, 45 (2d Cir.1989)). Here, Counterclaim Plaintiffs allege solely that Privado has not used the Mark; the pleadings are silent as to whether Privado may or may not intend to use the Mark

---

[17] Counterclaim Plaintiffs argue that the Court should not reach the adequacy of their alternative allegations in Counterclaim One because Counterclaim Defendants did not specifically challenge those allegations in their motion papers. *See* Countercl. Pls.' Mem. of Law in Opp'n at 14. However, Counterclaim Defendants have expressly requested dismissal of the "Amended Counterclaims in their entirety." Countercl. Defs.' Mem. of Law at 6. Although the substance of the briefing is focused on the fraud and first use theories, Counterclaim Defendants are not required to specifically address the deficiencies in each individual allegation contained within the claims they are challenging. Since the same general plausibility attack brought to bear with respect to the balance of the counterclaims applies with equal force to the alternative allegations pled in Counterclaim One, the Court will address the adequacy of the counterclaims in their entirety.

going forward.[18] Since nonuse and abandonment are not equivalent concepts, the claim cannot survive on the nonuse allegation alone.[19]

Likewise, no facts are alleged in support of the blanket assertions regarding improper licensing, which effectively amount to conclusory restatements of the general legal principle that a mark can be deemed abandoned if the licensor does not retain a sufficient degree of control over its use. *See Liebowitz v. Elsevier Sci. Ltd.*, 927 F. Supp. 688, 696 (S.D.N.Y. 1996) ("[A]lthough a trademark can be licensed, the licensor must retain some degree of control over the quality of the goods marketed under the trademark by the licensee." (citing *Dawn Donut Co., Inc. v. Hart's Food Stores, Inc.*, 267 F.2d 358, 367 (2d Cir. 1959))).

Because none of the allegations in Counterclaim One states a plausible claim for relief, that counterclaim is dismissed in its entirety.

## IV. Conclusion

For the reasons set forth above, Counterclaim Defendants' motion to dismiss is GRANTED. Both counterclaims are dismissed without prejudice.[20] If Counterclaim Plaintiffs wish to further amend their counterclaims, they shall do so by **July 28, 2014**.

---

[18] Nonuse of a trademark for three consecutive years constitutes *prima facie* evidence of abandonment. 15 U.S.C. § 1127. Here, the PTO's Notice of Recordation of the Mark's assignment by Rodriguez to Privado (attached to the Complaint as Exhibit B) is dated April 2011, and the amended counterclaims were filed approximately two and a half years later, in November 2013. Accordingly, the Court assumes that Counterclaim Plaintiffs did not seek to establish abandonment on that basis.

[19] For the reasons detailed above, the conclusory allegation that "Privado has abandoned the Mark" cannot cure the deficiency. Am. Countercl. ¶ 20.

[20] Counterclaim Plaintiffs have expressly requested leave to cure any defects in their pleadings. Countercl. Pls.' Mem. of Law in Opp'n at 15. Rule 15 of the Federal Rules of Civil Procedure provides that leave to amend should be freely granted, and "[i]t is the usual practice upon granting a motion to dismiss to allow leave to replead." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991); *see also Gelicity UK Ltd. v. Jell-E-Bath, Inc.*, No. 10 CIV. 5677 ILG RLM, 2013 WL 3315398, at *6 (E.D.N.Y. July 1, 2013) (granting leave to amend following dismissal under Rule 12(c)).

The Clerk of the Court is respectfully directed to terminate the motion (Doc. 23).

It is SO ORDERED.

Dated: July 7, 2014
New York, New York

_____
Edgardo Ramos, U.S.D.J.