# Medenica Law PLLC
*Attorneys at Law*
Olivera Medenica

3 Columbus Circle, 15th Fl.
New York, NY 10019
Tel: (212) 785-0070
Fax: (646) 514-5302
OMedenica@MedenicaLaw.com

May 6, 2016

**VIA ECF**

The Honorable Edgardo Ramos
United States Courthouse
40 Foley Square
New York, NY 10007

Re:   **Privado Marketing Group LLC, et al v. Eleftheria Rest Corp.
      13 cv 3137 (ER-LMS)**

Dear Judge Ramos:

We represent Plaintiffs Privado Marketing Group LLC, DC 114 Cedar NR, LLC and Don Coqui Holding Company, LLC ("Plaintiffs") in the above referenced matter. We are writing pursuant to your individual rules of practice, and the November 13, 2015 order in this matter requiring the parties to submit pre-motion letters by May 6, 2016. In accordance with the preceding, we respectfully ask for leave to file a motion for summary judgment in this matter.

I.   **Factual Background of the Dispute:**

The facts material to Plaintiffs' motion are not in dispute. On May 9, 2008, non-party Jaimie Rodriguez filed an "Intent to Use" trademark application with the USPTO for the DON COQUI Mark (the "Mark") in his own name. In July of 2009, Plaintiffs Don Coqui Holding Company LLC ("DC Holding") and DC 114 Cedar NR, LLC ("DCNR"), two entities controlled by Jaimie Rodriguez to whom Mr. Rodriguez had orally licensed the Mark, started using the DON COQUI Mark (the "Mark") for a Latin-themed restaurant located in New Rochelle, New York. On December 23, 2009, Mr. Rodriguez filed a statement of use in connection with the Mark's application, alleging that the date of first use of the mark was July 3, 2009. The USPTO issued a registration on the Mark on March 23, 2010.

On April 6, 2011, Mr. Rodriguez assigned the entire interest and goodwill in the Mark to Privado Marketing Group LLC ("Privado") and recorded the assignment with the USPTO. In October of 2011, pursuant to an oral agreement between the parties, Defendant Eleftheria Rest Corp. ("Eleftheria") started using the Mark for a Latin-themed restaurant located in Astoria, Queens. Defendant John Mangan is a minority shareholder in Eleftheria, and held a 10% member of DC Holding until July of 2011.

In early 2013, a dispute arose between the parties and Plaintiffs sent a cease and desist to Defendants requesting that Defendants cease using the Mark. Defendants refused, and have continued using the Mark to date.

Defendants argue that they have the right to use the DON COQUI Mark because they are senior users of the Mark, and because there was never an oral license between the parties for use the Mark at the Astoria location; presumably because Defendants had acquired such rights independently of Plaintiffs.

## II. Legal Standard

Courts employ substantially similar standards when analyzing claims for trademark infringement under the Lanham Act, 15 U.S.C. § 1114(1)(a); false designation of origin under the Lanham Act, 15 U.S.C. § 1125(a); trademark infringement under New York common law; and unfair competition under New York common law. See Richemont North America, Inc. v. Huang, No. 2013 U.S. Dist. LEXIS 136790, 2013 WL 5345814, at *5 n.15 (S.D.N.Y. Sept. 24, 2013) ("Count III is for unfair competition under Section 43(a) of the Lanham Act, and requires an identical test to that for infringement."); see also Sussman-Automatic Corp. v. Spa World Corp., 15 F. Supp. 3d 258 (E.D.N.Y. 2014).

In this regard, "[t]o prevail on an infringement action [under the Lanham Act, 15 U.S.C. § 1114(1)(a)], a plaintiff must demonstrate: (1) 'that it has a valid mark entitled to protection,' and (2) 'that the defendant's use of that mark is likely to cause confusion.'" Juicy Couture v. Bella Intern. Ltd., 930 F. Supp. 2d, 489, 498 (S.D.N.Y. 2013) (quoting Time, Inc. v. Petersen Publ'g Co. LLC, 173 F.3d 113, 117 (2d Cir.1999)).

## III. Plaintiffs have a Valid Trademark Entitled to Protection

A trademark registration "is prima facie evidence of the mark's validity, and of the registrant's ownership and exclusive right to use the mark in commerce in the United States." 15 U.S.C. 1115(a); Fusco Grp., Inc. v. Loss Consultants Int'l, Inc., 462 F. Supp. 2d 321, 327 (N.D.N.Y. 2006). "Ownership of a trademark stems from prior appropriation and use. Where claimants dispute the right to use a particular trademark, the general rule is that priority of appropriation and use determines which litigant will prevail in its use."' Fusco, 462 F.Supp.2d at 327; see also Time, Inc. v. Petersen Publ'g Co., 173 F.3d 113, 118 (2d Cir. 1999); La Societe Anonyme des Parfums le Galion v. Jean Patou, Inc., 495 F.2d 1265, 1270 n.5 (2d Cir. 1974). In order to prevail on this defense, the claimed senior user must demonstrate (1) present rights in the mark, (2) acquired prior to the date of registration, (3) continual use of the mark since that date, and (4) use prior to the registrant on the goods or services that are in issue. Dial-A-Mattress Operating Corp. v. Mattress Madness, Inc., 841 F. Supp. 1339, 1353-54 (E.D.N.Y. 1994).

Defendants' claim that they have senior rights to the Mark has no merit. In their papers and pleadings submitted before the Court, Defendants have argued that a New Jersey entity, Sofrito Xanadu LLC, has/had senior rights to the Mark because of prior use. Defendant John Mangan, however, testified during deposition that this entity was non-operative by mid 2009, and that he executed an agreement by April of 2009 whereby he agreed that Plaintiffs DC Holdings and DCNR would have exclusive use of the Mark. During discovery, Defendants had no responsive documents demonstrating the continuous use of the Mark by Sofrito Xanadu LLC. Accordingly, Defendants cannot demonstrate such senior use.

Defendants are expected to argue that even if that is the case, Plaintiffs DC Holdings and DCNR did not use the Mark pursuant to a valid license agreement. Such an argument must also fail. The

undisputed evidence shows that Jaimie Rodriguez unequivocally controlled every aspect of the entities, and that the Mark's use was done pursuant to an oral or implied license arrangement.

### IV. Defendants' Continued Use of the Mark was Unauthorized and Is Likely to Cause Consumer Confusion

When terminated licensees continue using a mark past termination, courts find the likelihood of confusion element satisfied simply by the fact that the infringer is a former licensee. See Ryan v. Volpone Stamp Co., Inc., 107 F. Supp. 2d 369, 381 (S.D.N.Y. 2000) (collecting cases); see also Feel Better Kids, Inc. v. Kids in Need USA, Inc., 2012 U.S. Dist. LEXIS 139770 (E.D.N.Y. 2012).

It is undisputed that Defendants received a cease and desist in February of 2013. Defendants will argue that there never was a license agreement, however, in light of the above, Defendants could only derive their rights to the Mark from Plaintiffs. Defendants are further expected to argue that even if that is the case, Plaintiffs abandoned the Mark by failing to properly license it.

This argument must fail because Eleftheria's majority shareholder, Dimitrios Mitsios, conceded in his deposition that he needed to get permission to use the Mark from Jaimie Rodriguez, and that he understood the daughters of Jaimie Rodriguez (the owners of Privado) as representing the interest of Jaimie Rodriguez. The undisputed evidence also demonstrates regular payments from Eleftheria to Privado for use of the Mark, as well control by Jaimie Rodriguez, his daughters, and Plaintiffs' controller, of the operations of Eleftheria.

Given the foregoing, we anticipate that Plaintiffs will have no difficulties proving Defendants' unauthorized use of the Mark and the resulting consumer confusion under the Lanham Act.

Application of well-settled law will confirm that Plaintiffs are entitled to summary judgment on their claims, and, we anticipate, will lead to an expeditious resolution of this dispute. Plaintiffs are available at the Court's convenience to address any questions Your Honor may have on this or any other case-related topic.

Respectfully submitted,

*[signature]*

Olivera Medenica

Cc:   Robert Golden, Esq. (by email)