# Medenica Law PLLC

*Attorneys at Law*
Olivera Medenica

3 Columbus Circle, 15th Fl.
New York, NY 10019
Tel: (212) 785-0070
Fax: (646) 514-5302
OMedenica@MedenicaLaw.com

June 16, 2016

**VIA ECF**

The Honorable Edgardo Ramos
United States Courthouse
40 Foley Square
New York, NY 10007

Re:   **Privado Marketing Group LLC, et al v. Eleftheria Rest Corp.**
      **13 cv 3137 (ER-LMS)**

Dear Judge Ramos:

We represent Plaintiffs Privado Marketing Group LLC, DC 114 Cedar NR, LLC and Don Coqui Holding Company, LLC ("Plaintiffs") in the above referenced matter. We are writing pursuant to this Court's May 23, 2016 Order directing the parties to file a response to pre-motion letters for summary judgment by June 16, 2016. Plaintiffs address the arguments raised in Defendants/Counterclaimants' Eleftheria Rest. Corp. and John Mangan ("Defendants") May 6, 2016 correspondence below.

**1.      Cancellation of the Don Coqui Mark:**

Defendants argue that they will seek "summary judgment on their counterclaim for cancellation of the trademark registration asserted by Plaintiffs." Plaintiffs note that Defendants, in their Second Amended Counterclaims dated July 28, 2014 (Doc. #31), have asserted nine separate counts for cancellation of Plaintiff's DON COQUI Mark (the "Mark"). This correspondence will not address all nine counts separately, but rather Defendants' general argument that: (1) non-party Jaimie ("Jimmy") Rodriguez committed fraud upon the USPTO in filing the intent-to-use trademark application because he purportedly never intended to use the Mark; and (2) that he also committed fraud by relying on a "false date of first use" when "the mark was in use prior to the date claimed by Jimmy Rodriguez."

A party seeking cancellation on the basis of fraud must establish that the registrant misrepresented a material fact, that the registrant knew or should have known that its representation was false, that the registrant intended to induce the PTO to act in reliance thereon, that the PTO reasonably relied on the misrepresentation, and that damages proximately resulted from that reliance. Patsy's Italian Rest., Inc. v. Banas, 658 F.3d 254, 270-71 (2d Cir. 2011) (citing 6J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition 31:61 (4th ed. 2008)). The burden is on Defendants to prove by "clear and convincing" evidence that Jaimie Rodriguez had a subjective intent to deceive the USPTO, and the Court must apply this standard strictly. Haggar Int'l Corp. v. United co., 906 F. Supp.2d 96, 127 (E.D.N.Y. 2012).

The parties' depositions clearly reveal that Jaimie Rodriguez was not only integral to the opening of the first DON COQUI restaurant, but that he was the party leading and speaking on behalf of the commercial ventures at issue at the Meadowlands, and then in New Rochelle.[1] The deposition of John Mangan reveals this, so does the deposition of Jaimie Rodriguez, and so do the documents submitted before the McMenamin Grill's bankruptcy proceedings. Jaimie Rodriguez also took on a leadership role in the management committee of Don Coqui Holding Company, LLC, and was the public face of the restaurant when it opened. The depositions of both Plaintiffs and Defendants unequivocally demonstrate that he was the party that controlled the Don Coqui brand, and that his daughters represented his interests.[2]

The Lanham Act recognizes that a mark may be used by a "related company" and that control is the key factor that determines whether a party is "related" to another or not. See 15 U.S.C. 1055, 1127. Here, the record will unequivocally demonstrate that Jaimie Rodriguez controlled every aspect of these commercial ventures, and that this was never an issue for Defendants – except of course until the present counterclaims. Accordingly, there was no fraud upon the USPTO with respect to use of the Mark.

There was also no fraud committed upon the USPTO with respect to the date of first use of the Mark. The question is whether, when signing his application oath, Jaimie Rodriguez held an honest, good faith belief that he was entitled to registration of his mark, and that he had reasonable basis for believing that no one else had the right to use the mark in commerce. Again, when Jaimie Rodriguez submitted his statement of use citing to a July 2009 date of first use for the Mark, he had every reason to believe that was the truth. Indeed, the use of the Mark at an earlier date was abruptly shut down by the McMenamin Grill's bankruptcy trustee and Jaimie Rodriguez was embroiled in various legal complications related to the McMenamin's bankruptcy proceeding as a result.

Furthermore, even if arguendo, another entity purportedly controlled by Defendant John Mangan had used the Mark months earlier, it was clear to all parties involved - and the record reveals the same - that this entity was not only defunct by July of 2009, but that John Mangan expressly agreed that all rights to the Mark would transfer over to Plaintiffs well before July of 2009. Accordingly, no fraud was committed upon the USPTO with respect to the date of first use either as Defendants had expressly disclaimed ownership of the Mark well prior to the July 2009 date.[3]

### 2.      Defendants Opened a Don Coqui in Astoria Pursuant to License with Plaintiffs:

Plaintiffs addressed this argument in their initial correspondence to the Court, and will not repeat it here. It is worth noting, however, that Defendant Eleftheria's own tax returns itemize payments made to Plaintiff Privado Marketing Group; Plaintiff Privado is and was the owner of the Mark when such payments were made. Eleftheria's majority shareholder himself testified that he had

---

[1] The first DON COQUI restaurant was opened in New Rochelle, at the site of the former McMenamin's Grill which was undergoing bankruptcy proceedings.
[2] In fact, Defendants' own submissions before this Court reveal their recognition and knowledge that Jaimie Rodriguez's daughters represent(ed) Jaimie Rodriguez's interests.
[3] Defendants do not allege, nor argue, that Defendant Eleftheria used the Mark first. Non party Dimitrios Mitsios, a majority shareholder of Eleftheria, testified during deposition that he was never involved in any manner with a Don Coqui operation in New Rochelle.

no right to the Mark and had to seek permission from Plaintiffs, knowing full well that Jaimie Rodriguez spoke on behalf of Plaintiffs. These individuals knew each other for years, socially and professionally, and were fully familiar with their respective business operations, and who spoke on behalf of whom.

The fact of the matter is that Defendants knew that without Plaintiffs' permission, they could not open a restaurant under the DON COQUI Mark. Defendants latch on to a hyper technical argument that defies logic in arguing that Defendants have senior use of the Mark through some defunct New Jersey entity from 7 years ago, and that no license was necessary, contemplated, or entered into between the parties. There was a license, but Defendants decided to continue using the Mark despite the license's termination wagering that an infringement lawsuit would financially atrophy Plaintiffs.

### 3.     Monetary Damages

Plaintiffs were unfortunately unable to timely pay their outstanding invoice with their damages expert. While Plaintiffs had made partial payment, the expert was unwilling to travel to a deposition without receiving full payment on all outstanding invoices. Plaintiffs were financially unable to do so.

This does not mean that monetary damages are foreclosed to Plaintiffs. As discussed above, the fact that Defendants continued using the Mark post termination date, with prior knowledge of Plaintiff's prior ownership, and in gross disregard of the cease and desist correspondence which Defendants admit they received, constitutes willful infringement warranting damages under the Lanham Act.

### 4.     Permanent Injunction

A permanent injunction is warranted in the present case. In the Second Circuit, where a party seeks injunctive relief in an action alleging trademark infringement, courts apply the four-factor test enunciated by the Supreme Court in eBay Inc. v. MercExchange, LLC, 547 U.S. 388, 390, 126 S. Ct. 1837, 164 L. Ed. 2d 641 (2006). Under that standard, injunctive relief should issue where the plaintiff has established a likelihood of success on the merits in seeking a preliminary injunction, or has actually succeeded on the merits in seeking a permanent injunction, and that: (1) plaintiff is likely to suffer irreparable injury in the absence of an injunction; (2) remedies at law, such as monetary damages, are inadequate to compensate plaintiff for that injury; (3) the balance of hardships tips in plaintiff's favor; and (4) the public interest would not be disserved by the issuance of a preliminary injunction.

The first prong is automatically satisfied by actual success on the merits. The second prong is satisfied when the record contains no assurance against defendant's continued violation of a plaintiff's trademark, as in the case of willfulness – which is one of the elements present in the present case. The remaining two factors are satisfied when a defendant builds its entire business on infringement – as is the case here. Mint, Inc. v. Amad, No. 10 Civ. 9395 (SAS), 2011 U.S. Dist. LEXIS 49813, 2011 WL 1792570, at *3 (S.D.N.Y. May 9, 2011) ("As for the balance of hardships, '[o]ne who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected.'"

(quoting Windsurfing Int'l, Inc. v. AMF, Inc., 782 F.2d 995, 1003 n.12 (Fed. Cir. 1986)) (alteration in original).

Contrary to Defendants' assertions, the brief time lapse of three months between Defendants' receipt of Plaintiffs' cease and desist and the filing of the present lawsuit does not constitute peaceful coexistence foreclosing Plaintiffs from injunctive relief. Accordingly, should Plaintiffs succeed on the merits of their claim, injunctive relief is a warranted form of relief for Defendants' willful infringement of Plaintiffs' trademark.

Respectfully submitted,

Olivera Medenica

Cc:   Robert Golden, Esq. (by email)